

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

PETER E REGAN
Vs.
SPICER HB, LLC et al

C.A. No. 2014 CA 007982 R(RP)

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge HERBERT B DIXON JR
Date: December 16, 2014
Initial Conference: 9:30 am, Friday, April 03, 2015
Location: Courtroom 415
500 Indiana Avenue N.W.
WASHINGTON, DC 20001

Caio.doc

EXHIBIT C

**ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Peter E. Regan
Plaintiff

vs.

Case Number 14-0007982

Mathew Spicer
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Peter D. Antonoplos, Esq.
Name of Plaintiff's Attorney

1725 DeSales St NW, #600
Address

Washington, DC 20036

By ______________________
Deputy Clerk

(202) 803-5676
Telephone

Date ______________________

如需翻译,请打电话 (202) 879-4828　Veuillez appeler au (202) 879-4828 pour une traduction　Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요　የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, ***DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.***

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CASUM.doc

FORM SUMMONS - Jan. 2011

EXHIBIT C

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

PETER E. REGAN
13 Evarts Street, NE
Washington, DC 20002

Plaintiff,

v.

SPICER HB, LLC
3814 12th Street, NE
Washington, DC 20017

and

MATHEW SPICER
9703 Watts Branch Drive
Potomac, MD 20854

Defendants.

Civil Action No. 14-0007982

***JURY TRIAL DEMANDED***

RECEIVED
Civil Clerk's Office
DEC 15 2014
Superior Court of the
District of Columbia
Washington, D.C.

**COMPLAINT**
**ACTION INVOLVING REAL PROPERTY**

COMES NOW Mr. Peter E. Regan, Plaintiff herein (hereinafter, "Plaintiff") by and through his undersigned counsel, pursuant to the District of Columbia Rules of Civil Procedure, and for his Complaint ("Complaint") against Defendant Spicer HB, LLC (hereinafter, "Defendant Spicer HB") and Defendant Mathew Spicer, (hereinafter, "Defendant Spicer" and collectively with Defendant Spicer HB, the "Defendants"), states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a natural person domiciled in the District of Columbia.

2. Plaintiff is the purchaser and current owner of the residential real property located at 13 Evarts Street, NE Washington, DC 20002 (hereinafter, the "Property").

3. Defendant Spicer HB is a District of Columbia Limited Liability Company, with its principal place of business at 3814 12th Street, NE, Washington, DC 20017.

4. Defendant Spicer HB is in the business of renovating and selling real property in the District of Columbia.

5. Defendant Spicer is a natural person domiciled in the State of Maryland and the President of Spicer HB, LLC.

6. Defendant Spicer is the Principal of Spicer HB, LLC.

7. Defendant Spicer is in the business of buying, renovating, and selling residential real properties in the District of Columbia with, by, and/or through Defendant Spicer HB.

8. By and through Defendant Spicer HB, Defendant Spicer extensively renovated the Property and sold the Property to Plaintiff.

9. The Property that is the subject of this suit is located in the District of Columbia; the contract that is the subject of this litigation was ratified in the District of Columbia; and all acts giving rise to this claim occurred in the District of Columbia.

10. This Court has jurisdiction over this matter under D.C. Code § 11-921.

11. Venue is proper, and this Court has personal jurisdiction over Defendants, pursuant to D.C. Code §13-422 and 13-423, on the basis that: 1) the Defendants contracted to sell real property located in the District of Columbia; 2) Defendant Spicer HB is a Limited Liability Company organized under the laws of, and with its principal place of business located in, the District of Columbia; and 3) Defendants caused tortious injury in the District of Columbia by an act or omission in the District of Columbia.

**STATEMENT OF FACTS**

12. On or about January 26, 2012, Defendant Spicer HB purchased the Property in an unfinished condition, for Two Hundred Five Thousand Dollars and No Cents ($205,000.00). The deed was recorded in the Land Records of the District of Columbia as instrument number 2012012448 on February 6, 2012. The January 26, 2012 Deed for the Property is attached hereto and incorporated herein as **Exhibit 1**.

13. Defendant Spicer HB purchased the Property with the intention of conducting a total renovation and selling it for a profit.

14. Soon after purchasing the Property, Defendants performed and/or caused to be performed extensive renovations and construction work (hereinafter "Renovations") on the Property, as evidenced by the permits issued, as follows:

a. On February 15, 2012, Defendants were issued a Building Permit for the Property for work pertaining to, *inter alia*, modification of the first floor bathroom, building a second-floor bathroom, with installation of new kitchen cabinets and appliances in the basement, and installation of new non-bearing partitions, as well as new flooring and paint. A copy of the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") Building Permit Application Status, Summary, is attached hereto and incorporated herein as part of **Exhibit 2**.

b. On April 24, 2012, after listing the Property for sale, Defendants were issued a Building Permit for the Property for construction of a new deck, with fence and concrete pad on the rear of the Property. See **Exhibit 2**.

15. On or about April 19, 2012, less than four (4) months after Defendant Spicer HB purchased the Property, Defendants caused the Property to be listed for sale (MRIS

Listing DC7822463, hereinafter, the "Listing") for the price of Five Hundred Sixty Thousand Dollars ($560,000.00). A copy of the Listing is attached hereto and incorporated herein as **Exhibit 3**.

16. The Listing describes the Property as a "complete renovation." See **Exhibit 3**.

17. On April 19, 2012, Plaintiff and Defendant Spicer HB entered into and ratified a standard GCAAR Regional Sales (the "Sales Contract") for the sale and purchase of the Property for Five Hundred Fifty Five Thousand Dollars ($555,000.00). A copy of the Sales Contract is attached hereto and incorporated herein as part of **Exhibit 4**.

18. In Paragraph 7 of the Sales Contract, Defendant Spicer HB, agreed to convey the Property to Plaintiff in an unfinished condition to be "*[c]ompleted as stated in contract*." See **Exhibit 4**.

19. The Sales Contract incorporates a fully executed Addendum of Clauses, dated April 19, 2012, containing a home inspection contingency permitting a right to negotiate after the inspection. See **Exhibit 4**.

20. The Sales Contract incorporates a General Addendum, executed by Plaintiff and Defendant Spicer HB on April 19, 2012 (the "April Addendum"), to address the terms of the continuing renovations work, providing, in relevant part, that:

**a.** "*As discussed with Matt Spicer on 4/18/2012 the materials used in completetion [sic] of this home will be equal to the quality, price, etc. . of the materials used on the following renovated homes: 107 Rock Creek Church Road NW, 2914 New Hampshire Ave. NW, and 638 Farragut Street NW*." See **Exhibit 5, ¶ 4**.

    b. "*Additional work in basement will be decided by purchaser and [Defendant Spicer] at end of build...Both buyer and seller will come to an agreement as to what that would entail.*" See **Exhibit 5, ¶ 6.**

c. "*Seller will communication with all involved via email regarding buyer choices and time deadlines as discussed. Buyer agrees and understands that if choice deadlines are not met seller will put his choice of items in to complete renovations in a timely manner.*" See **Exhibit 5, ¶ 8**.

21. On or about April 20, 2012, Defendant Spicer prepared, ratified, and certified a GCAAR Seller's Property Disclosure (the "Disclosure Statement") on behalf of Defendant Spicer HB. On April 30, 2012, Plaintiff reviewed and countersigned the Disclosure Statement. A copy of the Disclosure Statement is attached hereto and incorporated herein as **Exhibit 6**.

22. On the Disclosure Statement, Defendant Spicer ratified and certified on behalf of Defendant Spicer HB that he had no actual knowledge of any:

a. structural conditions with the roof, and had no actual knowledge of current leaks or evidence of moisture from the roof of the Property;

b. structural problems with the basement of the Property, and had no actual knowledge of any current leaks or evidence of moisture in the basement;

c. structural problems with the walls and floors of the Property, but also noted that "*All issues addressed*;"

d. plumbing system defects at the Property;

e. drainage problems on the Property. *See* Disclosure Statement, **Exhibit 6.**

23. On June 27, 2012, pursuant to the Sales Contract, Plaintiff engaged the services of Gum Bay Home Inspection Services ("GBH") to perform a pre-settlement inspection (the "Initial Inspection") of the unfinished Property. That day, GBH inspected the Property, and prepared and delivered to Plaintiff a written report of the observations and recommendations from the Initial Inspection (the "GBH Inspection Report"). Notably, GBH could not inspect the roof, exterior, foundation, deck, or stairs of the Property because Defendants' had blocked access with construction. A copy of the GBH Inspection Report is attached hereto and incorporated herein as **Exhibit 7.**

24. On June 28, 2012, following the Initial Inspection, Plaintiff and Defendants ratified a second addendum to the Sales Contract (the "June Addendum") requiring Defendant Spicer HB to make certain repairs to the Property recommended by the Inspection Report. A copy of the June Addendum is attached hereto as **Exhibit 8**.

25. Defendants represented to Plaintiff that they would continue to renovate the Property following Settlement until the Property was in a finished condition, in accordance with Plaintiff's choices and instructions. See April Addendum, **Exhibit 5**.

26. Plaintiff agreed to proceed with the purchase of an unfinished property relying upon Defendants' representations that the construction and renovations would be free of defects, up to code, and done in a professional and workmanlike manner, and that the Defendants would fully finish the Property in a timely manner after Settlement.

27. On June 29, 2012, Plaintiff made Settlement on the Property with Defendant Spicer HB, for Five Hundred Fifty-Five Thousand Dollars ($555,000.00). This represents an estimated gross profit to Defendant of Three Hundred Fifty Thousand

Dollars ($350,000.00). A copy of the HUD-1 is attached hereto and incorporated herein as **Exhibit 9**.

28. For two (2) weeks following Settlement on the Property, Defendants continued to perform work on the Property, then abandoned the project with several repairs incomplete, and stopped all communication with Plaintiff.

29. Near the end of July 2013, Plaintiff contacted Defendant in order to address a water leak from the upstairs bathroom that was dripping into the living room. The Defendants responded by sending a Spicer HB employee to repair the leak. The Spicer HB employee retiled the bath but failed to remediate the cause of the leak and repair the underlying damage.

30. On August 10, 2013, in the 2:38 p.m. email to Defendant Spicer, Plaintiff's realtor, Jill Barsky, ("Ms. Barsky") inquired if Defendant Spicer intended to complete the repairs to the Property as agreed to in the Addenda. A copy of the August 10, 2013 email is attached hereto and incorporated herein by reference as **Exhibit 10**.

31. Defendant Spicer failed to respond to the August 10, 2013 email, or take action in relation to the remaining repairs that needed to be done on the Property.

32. On September 16, 2013, at 8:19 p.m. Ms. Barsky sent Defendant Spicer a second email to again inquire if he intended to complete the agreed upon repairs. A copy of the September 16, 2013 Email is attached hereto and incorporated herein by reference as **Exhibit 11**.

33. On September 20, 2013, in the 9:58 a.m. email to Defendant Spicer, Ms. Barsky inquired as to why Defendants were not responding and asked for an update on the

renovations and repairs list of repairs to the Property. A copy of the September 20, 2013 email is attached hereto and incorporated herein by reference as **Exhibit 12**.

34. Defendant Spicer failed to respond to the realtors communications, and failed to complete the remaining renovations and repairs that needed to be done on the Property.

35. In October 2013, Plaintiff observed water leaking through one of the pocket doors between the original home and the new addition built by Defendant.

36. On October 21, 2013, Plaintiff engaged the services of MG Roofing to inspect the source of the leak. MG Roofing determined that the leak was caused by an improperly installed roof membrane and flashing, and estimated that the cost of the repairs to the roof would be in excess of $12,000. A copy of the MG Roofing estimate is attached hereto and incorporated herein as **Exhibit 13.**

37. On November 7, 2013, Plaintiff hired MG Roofing to make some of the necessary repairs to prevent further damage to the Property.

38. Due to Plaintiff's concerns with the workmanship relating to the Property, Plaintiff engaged the services of Ohi Engineering Group, PLLC ("Ohi Engineering") to provide a complete structural assessment regarding the rear deck and the structural integrity of the Property. After an inspection of the Property, Ohi Engineering provided a detailed report, dated October 28, 2013, outlining structural problems with the Property and recommendations for remediation ("Ohi Report"). A copy of the Ohi Report is attached hereto and incorporated herein as **Exhibit 14.**

39. Ohi Engineering's report identified major issues to the piers and framing under the Property as well as improper construction of the rear deck. In addition, the Ohi Report identified major problems and code violations with the area beneath the Property,

and the rear deck including: masonry piers that are out of plumb and need to be rebuilt; an improperly seated center beam that does not provide sufficient bearing; improperly shimmed and connected joists; unfinished and uncovered soffit exposing insulation; lack of proper flashing; improperly sloped drain pipe; cracked posts under the deck that need to be replaced; and deck stairs that are improperly built and do not meet code requirements. See Ohi Report, **Exhibit 14**.

40. On November 12, 2013, Plaintiff received an estimate from JP General Construction, LLC for Eight Thousand Fifty Dollars ($8,050.00) for necessary repairs to the framing and piers beneath the Property and rear deck, as well as the Property's exterior drainage problem. A copy of the JP General Construction Estimate is attached hereto and incorporated herein as **Exhibit 15**.

41. On January 20, 2014, Plaintiff sent Defendant a letter offering the amicable settlement of the dispute. A copy of the letter is attached hereto and incorporated herein by reference as **Exhibit 16**.

42. Defendants have declined the Plaintiff's offer to settle these claims.

**COUNT I**
**BREACH OF CONTRACT**

**(Sales Contract and Seller Disclosure Statement)**

43. Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 42 of the Complaint.

44. On April 19, 2012, Plaintiff and Defendants entered into the fully ratified and enforceable Sales Contract for the Property. *See* **Exhibit 4**.

45. On June 29, 2012, Plaintiff and Defendants made full Settlement on the Property. *See* **Exhibit 7**.

46. Plaintiff fully performed his obligations under the Sales Contract.

47. The Sales Contract incorporated the Addenda to the Contract, as well as the Disclosure Statement. See **Exhibit 4**.

48. Under the material terms of the Sales Contract, Defendant HB agreed to complete the Property renovations and repairs post-settlement in a workmanlike and timely manner until fully finished, and to timely deliver the fully finished Property in a condition free from material defects.

49. Under the material terms of the Sales Contract, Defendants agreed to disclose in good faith known material defects in the Property as required under D.C. Code § 42-1301, *et seq*. In consideration of substantial purchase money consideration paid to Defendants, Defendants were contractually obligated to disclose to the Plaintiff any defects with the: roof (including any evidence of moisture or leaks), wall and floors, basement, plumbing system, and exterior drainage system of the Property that they had actual knowledge of at the time of Settlement.

50. On June 29, 2012, Defendants delivered to the Plaintiff at Settlement the Property in an unfinished condition, with a continuing obligation to complete all renovations and repairs necessary to bring the Property to a fully renovated condition, and to complete all repairs as set forth in the Contract.

51. In July 2012, Defendants abandoned the repair and renovation work and stopped responding to Plaintiff's requests to complete the work pursuant to the Sales Contract.

52. Defendants materially breached the Sales Contract by failing to disclose known defects in the Property, including in its roof and foundation; by failing to deliver to Plaintiffs the Property in the promised condition, free from defects, and with all systems

in normal working order; and by failing to fulfill their continuing obligation to complete in a workmanlike manner, post-settlement repairs set forth in the June 28, 2012 General Addendum to the Contract in a workmanlike-manner.

53. Defendants' material breach has caused Plaintiff to incur a substantial pecuniary loss and Plaintiff must incur additional costs in the future to restore the Property to the fully renovated, structurally sound, and defect-free condition it was warranted to be by Defendants.

54. Despite several demands by the Plaintiff to Defendants to pay for or complete repairs to restore the Property to the promised condition, Defendants have refused to pay for all necessary repairs to the Property, and have refused to repair defects throughout the Property, as promised and contracted for, in a timely manner.

WHEREFORE, the Plaintiff requests, judgment against Defendants, jointly and severally, in the amount of Twenty Five Thousand Dollars ($25,000.00), reasonable costs and attorney's fees, and all other relief this Court deems just and proper.

**COUNT II**
**BREACH OF WARRANTY**

55. Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 42 of the Complaint.

56. In listing, offering to sell, and selling the Property to Plaintiff, Defendant made explicit and implicit representations, warranties, assurances and statements that the Property was safe and fit for habitation, and would not expose Plaintiff to an unreasonable danger or risk to life, health and safety. Defendant made further representations, warranties, assurances and statements that the Property was renovated in

compliance with the District of Columbia Code and other applicable statutes, laws, regulations, and code provisions, as follows:

a. The Listing for the property contains certain representations regarding the renovation to the Property, promising delivery of a "Stunning, spacious complete renovation of a classic DC row home....Dreamy Master Suite w/ private grand spa-like en suite bath w/ double vanities! Gourmet open kitchen w/ bonus sitting area. Fully-Finished Rec room with bedroom and full bath!"

b. Defendant Spicer completed the Disclosure Statement, which contained warranties and representations as to the condition of the Property, in particular, that the Property was free from structural, roofing, external drainage, and plumbing problems. Plaintiff relied on the warranties and representations Defendant made on the Disclosure Statement, as well as the Listing, in making his decision to purchase the Property from Defendant.

c. Defendant Spicer made specific representations and warranties regarding the continuing renovation work, and repairs, that would be undertaken on the Property, post-closing, assuring that such renovations and repairs would be up to Code, and done in a workmanlike fashion. Defendant Spicer made these warranties and representations as a professional in the business of renovating residential real property in the District of Columbia, and as the only party to have had access to the foundation of the Property and portions of the Property's roof, during the time that

Plaintiff's inspector expressed a desire to but inability to inspect same due to the ongoing renovation.

57. At the time of the Sales Contract with Plaintiff, and subsequent to Settlement, when major renovations to the Property continued, Defendants knew or should have known that the Property contained substantial and material defects relating to the roof, structural components of the Property, and water intrusion.

58. By listing, offering to sell, and ultimately selling the Property, when it was not safe and was rife with material roof, structural, plumbing, and water intrusion-related defects, Defendants exposed Plaintiff to an unreasonable danger and risk to life, health and safety; and sold to Plaintiff a Property which was not in compliance with the District of Columbia Building Code and other applicable statutes, laws, regulations, and code provisions. By so doing, Defendants breached warranties made and owed to Plaintiff.

59. Defendants materially breached these warranties by delivering the Property to Plaintiff, post-settlement and after renovations were completed, with widespread and concealed structural defects, in a condition grossly deviating from the completely renovated and structurally sound condition in which Defendant represented it to be.

60. Plaintiff was wrongfully induced into buying the Property, and then forced to incur substantial expense in hiring structural engineers to address the nature of the structural problems that existed on the Property, and to incur substantial expense in performing repairs to the Property that Defendants promised to perform.

61. Defendant's material breach caused Plaintiff to incur substantial expenses to date and Plaintiff must incur additional costs in the future to restore the Property to the structurally sound and defect-free condition it was warranted to be by Defendant.

WHEREFORE, the Plaintiff requests judgment against Defendants, jointly and severally, in the amount of Twenty Five Thousand Dollars ($25,000.00), reasonable costs and attorney's fees, and all other relief this Court deems just and proper.

**COUNT III**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

62. Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 42 of the Complaint.

63. The Sales Contract entered into between Plaintiff and Defendant Spicer HB contained an implied duty of good faith and fair dealing.

64. Defendants materially breached this duty by promising to continue repairing and renovating the Property after Settlement until it was complete, then, shortly after Settlement, abandoning work on the Property prior to completion.

65. Defendants materially breached this duty by making false representations that all renovations and repairs to the Property were made in a workmanlike fashion, and in accordance with all applicable Building Codes and building standards.

66. Defendants materially breached this duty by making false representations on the Disclosure Statement that Defendants had no actual knowledge of any defects in the Property and that, as it pertains to defects in the floors and walls, Defendants led Plaintiff to believe that any problems that had existed were adequately repaired in stating that "*All issued addressed.*" See Exhibit 6.

67. On June 29, 2012, believing Defendants were acting in good faith, Plaintiff made full settlement on the Property and paid Defendants the purchase price of Five Hundred Fifty-Five Thousand Dollars ($555,00.00). Defendants' material breach deceived

Plaintiff into proceeding to Settlement on the unfinished Property, believing that the Property would be, once completed, in a condition worth the value of the purchase price.

68. Defendants acted in bad faith by delivering the Property to Plaintiff with known but undisclosed defects.

69. Defendants acted in bad faith by failing to complete repairs they contractually promised to make post-settlement, and by abandoning their contractual duties and abruptly ending communications with Plaintiff.

70. Defendants' material breach has caused Plaintiff to incur a substantial pecuniary loss. This has already required Plaintiff to incur substantial expense to date and Plaintiff must incur additional costs in the future to restore the Property to the structurally sound and defect-free condition it was warranted to be by Defendants.

WHEREFORE, the Plaintiff request, judgment against Defendants, jointly and severally, in the amount of Twenty Five Thousand Dollars ($25,000.00), reasonable costs and attorney's fees, and all other relief this Court deems just and proper.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**

71. Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 42 of the Complaint.

72. Defendants had a duty to exercise reasonable care in the marketing, selling, advertising and otherwise promoting of the Property to potential purchasers such as Plaintiff, which included a duty to accurately describe the condition of the Property to Plaintiff.

73. Defendants breached this duty and negligently misrepresented the Property's suitability for occupancy and actual condition when they:

(a) omitted from and/or misrepresented material information in the Seller's Disclosure Statement, incorporated into the Sales Contract, in stating that they did not know of:

i. any defects in relation to the structural components of the roof;

ii. any current leaks or evidence of moisture from the roof;

iii. any defects in relation to the structural components in the walls and floors, while also representing that "all issues addressed";

iv. any defects in the structural components of the basement;

v. any current leaks or evidence of moisture in the basement; or

vi. any defects in the plumbing system; and

(c) represented to Plaintiff that renovations to the Property would continue after settlement, and that such renovations would continue until completed, and would be made in a workmanlike fashion and in compliance with all applicable Building Codes and regulations.

74. Defendants negligently and carelessly made false representations of material fact to Plaintiff by providing the Disclosure Statement to Plaintiff indicating there were no structural, drainage, water infiltration, or other defects with the Property, including latent defects, which he should have known were false. Defendants made false representations of material fact when they declared on the Disclosure Statement that the Property had no known defects, when they knew or should have known of the following:

a) Statement number A.1. of the Disclosure Statement requires the seller to answer the following question with respect to structural defects in the roof, "[d]oes the seller have actual knowledge of any current leaks or evidence

of moisture from Roof?" Defendants answered "No." The renovations to the roof of the Property, however, were not completed in a workmanlike fashion, contained numerous defects, and required over $12,000 in repairs. *See* MG Roofing Estimate, **Exhibit 11**.

b) Statement number A.4. of the Disclosure Statement requires the seller to answer the following question, "[d]oes the seller have actual knowledge of any structural defects in walls or floors?" to which Defendants answered "No." The renovations to the area under the Property that is supported by piers and framing, however, were not completed in a workmanlike manner, contained numerous defects, and required extensive repairs. *See* Ohi Engineering Report (**Exhibit 12**); JP General Contractors Estimate (**Exhibit 13**).

c) Statement number D.1. of the Disclosure Statement requires the seller to answer the following question, "[d]oes the seller have actual knowledge of any problem with drainage on the property?" Defendants answered "No". However, the work performed during renovations with respect to the exterior drainage and sloping of the property was not performed in a workmanlike fashion, contained numerous defects, and required repairs. *See* Ohi Engineering Report (**Exhibit 12**); JP General Contractors Estimate (**Exhibit 13**).

d) Statement number B.3. of the Disclosure Statement requires the seller to answer the following question, "[d]oes the seller have actual knowledge of any defects with the plumbing system?" to which Defendants answered

"No." The work performed with respect to the renovations to the plumbing system of the Property, however, was not performed in a workmanlike fashion, contained numerous defects, and required repairs. *See* Barsky Emails, **Exhibits 8 through 10**.

e) Defendants negligently and carelessly made false representations of material fact to Plaintiff in the Disclosure Statement, in Section A(4) where Defendants checked "No" in regards to actual knowledge of structural defects in the walls and hand wrote "[a]ll issues addressed."

75. When answering the above questions in the Disclosure Statement, Defendants had actual knowledge, or should have known, that there were previous instances of drainage problems with the Property; had actual knowledge or should have known of plumbing issues on the Property relating to, *inter alia*, improper slope of the drains; had actual knowledge or should have known of structural defects underneath the Property; and had actual knowledge or should have known of defects to the roof.

76. Defendants knew or should have known of the foregoing defects based on their status as real estate professionals, who were in the business of renovating and selling numerous properties in the District of Columbia.

77. Defendants also made negligent misrepresentations of material fact with respect to the repairs that they promised would be performed after settlement in a workmanlike fashion, which they represented would result in a fully finished basement free from defects.

78. Defendants' statements as to the condition of the Property involved a material

issue for the Plaintiff, as his decision to purchase the Property was made on the belief that he was purchasing a Property that would continue to be renovated after closing until renovations were fully completed, and in which all work would be completed in a professional and workmanlike manner to provide the Property to Plaintiff free of defects and up to code.

79. Plaintiff, to his detriment, entered into the Sale Contract with Defendants in reasonable reliance upon their statements and omissions, based on Defendants' status as real estate professionals with extensive experience in renovating and selling properties, and, as a direct and proximate result of these negligent misrepresentations, purchased a Property that contained material defects, and which was not as valuable as Plaintiff believed it to be at the time of purchase.

80. As a result of Defendants' negligent and careless misrepresentations, Plaintiff has incurred significant damages. Plaintiff was wrongfully induced into buying the Property, believing it would be free of defects, up to code and done in a professional manner. Defendants' material breach caused Plaintiff to incur substantial expenses to date and Plaintiff must incur additional costs in the future to restore the Property to the structurally sound and defect-free condition it was warranted to be by Defendants.

WHEREFORE, the Plaintiff request, judgment against Defendants, jointly and severally, in the amount of Twenty Five Thousand Dollars ($25,000.00), reasonable costs and attorney's fees, and all other relief this Court deems just and proper.

**COUNT V**
**NEGLIGENCE PER SE**
**(Violation of D.C. Code §42-1305, *et seq.*)**

81. Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 42 of the Complaint.

82. Sections 42-1305 and 42-1306 of the D.C. Code establishes that sellers of residential real property have a duty to furnish a Disclosure Statement to prospective purchasers disclosing all known defects in the real property, including structural issues, roof condition, plumbing, and drainage problems.

83. Plaintiff is an individual intended to be protected by D.C. Code § 42-1305 and § 42-1306.

84. Defendants made extensive renovations and repairs to the Property, and therefore knew of the structural, roof, plumbing, and drainage defects that existed in the Property at the time of Settlement.

85. Defendants violated their duties under DC Code §§ 42-1305 and 42-1306 when they failed to disclose to Plaintiff on the Disclosure Statement the Property's known defects, and falsely stated there were no such known defects, when in fact there were structural, roof, plumbing, and drainage defects on the Property. Specifically, Defendants stated on the Disclosure Statement as follows:

a. Statement A.1 of the Disclosure Statement requires the seller to answer the following question, "[d]oes the seller have actual knowledge of any structural defects in walls or floors?" Defendants answered "No."

b. Statement number A.4. of the Disclosure Statement requires the seller to answer the following question, "[d]oes the seller have actual knowledge of any structural defects in walls or floors?" Defendants answered "No."

c. Statement number D.1. of the Disclosure Statement requires the seller to answer the following question, "[d]oes the seller have actual knowledge of any problem with drainage on the property?" Defendants answered "No"

86. Plaintiff reasonably relied on the statements made in the statutorily mandated Disclosure Statement to his detriment.

87. As a direct and proximate result of the misstatements and omissions contained in the Disclosure Statement, Defendants induced Plaintiff to purchase the Property and caused Plaintiff to suffer injury because of extensive defects to the Property. But for Defendants misstatements and omissions regarding the condition of the Property, Plaintiff would not have purchased the Property at the agreed-upon price.

88. The failure of Defendants to disclose, in good faith, known defects, caused and continues to cause Plaintiff significant damage, including but not limited to substantial economic losses including Property damages and repairs costs, professional fees and expenses.

WHEREFORE, the Plaintiff requests judgment against Defendants, jointly and severally, in the amount of Twenty Five Thousand Dollars ($25,000.00), reasonable costs and attorney's fees, and all other relief this Court deems just and proper.

**COUNT VII**
**NEGLIGENCE**

89. Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 42 of the Complaint.

90. Defendants, as professionals in the real estate construction business, had a duty to perform the construction, renovations, and repairs to the Property in a workmanlike

manner, and to disclose any known material defects of the Property to Plaintiff at or before the time of Settlement.

91. As the party making the renovations and repairs to the Property, Defendants knew of the structural and other defects that existed in the Property at the time he sold the Property to Plaintiff.

92. Defendants were aware that Plaintiff was to use the Property as his primary residence.

93. Defendants breached their duty to Plaintiff by failing to disclose and/or concealing latent defects of the Property prior to or at the time of Settlement.

94. Defendants breached their duty to Plaintiff to make renovations and repairs in a workmanlike manner by performing such renovations and repairs in a haphazard and incomplete manner, in violation of applicable industry standards, regulations and codes.

95. Defendants' negligence has caused injury to Plaintiff in the form of significant damage, including but not limited to substantial economic losses including Property damages and repair costs, professional fees and expenses.

WHEREFORE, the Plaintiff requests judgment against Defendants, jointly and severally, in the amount of Twenty Five Thousand Dollars ($25,000.00), reasonable costs and attorney's fees, and all other relief this Court deems just and proper.

**COUNT VIII**
**FRAUDULENT MISREPRESENTATION**

96. Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 42 of the Complaint.

97. Defendants made false representations to Plaintiff when they:

(a) omitted from and/or misrepresented material information in the Seller's Disclosure Statement, incorporated into the Sales Contract, in stating that they did not know of:

i. any defects in relation to the structural components of the roof;

ii. any current leaks or evidence of moisture from the roof;

iii. any defects in relation to the structural components in the walls and floors, while also representing that "all issues addressed";

iv. any defects in the structural components of the basement;

v. any current leaks or evidence of moisture in the basement; or

vi. any defects in the plumbing system; and

(c) represented to Plaintiff that renovations to the Property would continue after settlement, and that such renovations would continue until completed, and would be made in a workmanlike fashion and in compliance with all applicable Building Codes and regulations.

98. Specifically, Defendants' intentional false representations of material fact provided in the Disclosure Statement to Plaintiff included the following:

a) Statement number A.1. of the Disclosure Statement requires the seller to answer the following question with respect to structural defects in the roof, "[d]oes the seller have actual knowledge of any current leaks or evidence of moisture from Roof?" Defendants answered "No." The renovations to the roof of the Property, however, were not completed in a workmanlike fashion, contained numerous defects, and required over $12,000 in repairs. *See* MG Roofing Estimate, **Exhibit 11**.

b) Statement number A.4. of the Disclosure Statement requires the seller to answer the following question, "[d]oes the seller have actual knowledge of any structural defects in walls or floors?" to which Defendants answered "No." The renovations to the area under the Property that is supported by piers and framing, however, were not completed in a workmanlike manner, contained numerous defects, and required extensive repairs. *See* Ohi Engineering Report (**Exhibit 12**); JP General Contractors Estimate (**Exhibit 13**).

c) Statement number D.1. of the Disclosure Statement requires the seller to answer the following question, "[d]oes the seller have actual knowledge of any problem with drainage on the property?" Defendants answered "No". However, the work performed during renovations with respect to the exterior drainage and sloping of the property was not performed in a workmanlike fashion, contained numerous defects, and required repairs. *See* Ohi Engineering Report (**Exhibit 12**); JP General Contractors Estimate (**Exhibit 13**).

d) Statement number B.3. of the Disclosure Statement requires the seller to answer the following question, "[d]oes the seller have actual knowledge of any defects with the plumbing system?" to which Defendants answered "No." The work performed with respect to the renovations to the plumbing system of the Property, however, was not performed in a workmanlike fashion, contained numerous defects, and required repairs. *See* Barsky Emails, **Exhibits 8 through 10**.

e) Defendants negligently and carelessly made false representations of material fact to Plaintiff in the Disclosure Statement, in Section A(4) where Defendants checked "No" in regards to actual knowledge of structural defects in the walls and hand wrote "[a]ll issues addressed."

99. When answering the above questions in the Disclosure Statement, Defendants, as the professionals that renovated the Property, had actual knowledge that there were previous instances of drainage problems with the Property; had actual knowledge of plumbing issues on the Property relating to, *inter alia*, improper slope of the drains; had actual knowledge of structural defects underneath the Property; and had actual knowledge of defects to the roof (as indicated by the handwritten statement on the Disclosure Statement that "*all issues addressed*").

100. Defendants knew of the foregoing defects based on their status as real estate professionals, who are in the business of renovating and selling numerous properties in the District of Columbia.

101. These misrepresentations were material as Plaintiff would not have purchased the Property had he known the actual condition of the Property, in particular the roof, or had he known the Defendants did not intend to complete the Property as promised.

102. Defendants made these false misrepresentations with the intent to deceive Plaintiff into making settlement on the Property for more value than he would have paid had he known of the existing defects and had he known that the Property would not be finished in a condition as Defendants represented it would be.

103. Plaintiff, to his detriment, entered into the Sale Contract with Defendants in reasonable reliance upon their statements and omissions, based on Defendants' status as

real estate professionals with extensive experience in renovating and selling properties, and, as a direct and proximate result of these negligent misrepresentations, purchased a Property that contained material defects, and which was not as valuable as Plaintiff believed it to be at the time of purchase.

104. As a result of Defendants' false misrepresentations, Plaintiff has incurred significant damages. Plaintiff was wrongfully induced into buying the Property, believing it would be free of defects, up to code and done in a professional manner. Defendants' material breach caused Plaintiff to incur substantial expenses to date and Plaintiff must incur additional costs in the future to restore the Property to the structurally sound and defect-free condition it was warranted to be by Defendants.

WHEREFORE, the Plaintiff request, judgment against Defendants, jointly and severally, in the amount of Twenty Five Thousand Dollars ($25,000.00), punitive damages in the amount of Seventy Five Thousand Dollars ($75,000.00), reasonable costs and attorney's fees, and all other relief this Court deems just and proper.

**COUNT IX**
**UNLAWFUL TRADE PRACTICES**
**(Violation of DC Code § 28-3901, *et seq.*)**

105. Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 42 of the Complaint.

106. Defendant Spicer and Defendant HB Spicer are both "merchants" of "goods and services" as defined by the District of Columbia Consumer Protection Procedures Act, § 28-3901, *et seq*.

107. Plaintiff is a "consumer" within the meaning of the Statute, and is within the class of persons that is designed to be protected by the Statute, D.C. Code § 28-3901.

108. Specifically, Defendants committed unlawful trade practices in violation of D.C. Code §§ 28-3904 (d)-(f), when Defendant Spicer (i) represented that his construction and remodeling services performed were of the quality of a licensed professional, (ii) he materially misrepresented that he would provide to Plaintiff, post-settlement, a fully renovated Property that was of a habitable condition free from defects and hazards, and (iii) when he promised to complete repairs contained in the Sales Contract Addendum after settlement, all of which induced Plaintiff into entering into the Sales Contract.

109. Specifically, Defendants committed unlawful trade practices in violation of D.C. Code §§ 28-3904 (f), when Defendant Spicer failed to disclose in the Seller's Disclosure Statement, the Property's defects and hazards to Plaintiff that Defendants discovered in the course of making renovations and repairs to the Property, post-settlement.

110. Plaintiff has suffered injury as a result of Defendants' unlawful trade practices, including, but not limited to, Property damages and repairs costs directly resulting in significant and substantial consequential damages, including economic loss.

WHEREFORE, the Plaintiff demands judgment against Defendant Spicer in the amount of treble damages of Seventy Five Thousand Dollars and No Cents ($75,000.00), reasonable attorneys' fees, costs and all other relief this Court deems proper.

**COUNT X**
**ALTER EGO LIABILITY**

111. Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 42 of the Complaint.

112. Upon information and belief, Defendant Spicer is now and was, at all times herein mentioned, the Principal, and therefor an agent, of Defendant Spicer HB.

113. Upon information and belief, Defendant Spicer owns at least fifty percent of Defendant Spicer HB, and dominates the conduct of said company.

114. Upon information and belief, there has been an extensive intermingling of assets between the company, Defendant Spicer HB, and its principle, Defendant Spicer.

115. Upon information and belief, Defendant Spicer HB is undercapitalized.

116. Defendant Spicer's domination of the conduct of Defendant Spicer HB is evidenced by Defendant Spicer's involvement in every step of the subject real estate transaction between Plaintiff and Spicer HB, including all negotiations, execution of the sales contract, Addenda thereto, and Seller's Disclosure Statement.

117. Based on the foregoing, there is a unity of ownership and interest between Defendant Spicer and Defendant Spicer HB.

118. Upon information and belief, Defendant Spicer has used the Limited Liability Company form of Spicer HB as a means of perpetuating a wrong, in the form of sub-par and incomplete renovations and repairs, in direct breach of the promise to Plaintiff to make high quality and workmanlike renovations and repairs to the Property.

119. Based on the foregoing allegations, Defendant Spicer HB is an alter-ego of Defendant Spicer, and Defendant Spicer HB should be held jointly and severally liable with Defendant Spicer for the relief sought by Plaintiff herein.

**[signature continues onto next page]**

## PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

By ______________________

Peter D. Antonoplos, Esq.
DC Bar # 485119
Antonoplos & Associates, Attorneys at Law
1725 DeSales Street, NW
Suite 600
Washington, DC 20036
Telephone: (202) 803-5676
Fax: (202) 803-5677
Email: Peter@AntonLegal.com
*Attorney for the Plaintiff*

EXHIBIT C