# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PETER E. REGAN
    Plaintiff

    v.

SPICER HB, LLC, *et al.*,
    Defendants

Civil Action No. 15-228 (CKK)

## MEMORANDUM OPINION
(September 22, 2015)

Plaintiff Peter Regan brings this action against Spicer HB, LLC, and Mathew Spicer, asserting claims for breach of contract, fraud, and other violations of District of Columbia law arising out of the Plaintiff's purchase of residential real estate in Washington, D.C. Defendants have filed a motion to dismiss all claims for failure to state a claim. Specifically, Plaintiff alleges that Defendants failed to complete renovations that were promised and that there were extensive defects regarding the roof and other areas of the property that existed at the time Plaintiff purchased the property from Defendant Spicer HB, LLC. Presently before this Court is Defendants' [9] Motion to Dismiss Complaint. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS IN PART and DENIES IN PART Defendants' motion, for the reasons stated below.

---

[1] The Court's consideration has focused on the following documents:
- Defendants' Motion to Dismiss Complaint ("Defs.' Mot."), ECF No. 9;
- Plaintiff's Opposition to Defs.' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 11; and
- Defendants' Reply to Plaintiff's Opposition to Defs.' Motion to Dismiss ("Defs.' Reply"), ECF No. 13.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff' Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). Moreover, when a written instrument is attached to a complaint and it contradicts the allegations in the complaint, the written instrument controls. *See* 5A Charles Wright & Arthur Miller, *Federal Practice and Procedure: Civil 3d* § 1327, 450-451 (3d ed. 2004) ("It appears to be well settled that when a disparity exists between a written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit."). Here, Plaintiff has attached to his Complaint (1) a Greater Capital Area Association of Realtors ("GCAAR") Regional Sales Contract dated April 18, 2012; (2) a Jurisdictional Disclosure and Addendum to the Sales Contract; and (3) a Seller's Disclosure Statement dated April 30, 2012. Accordingly, the Court will rely on the terms of these written instruments to the extent they directly and clearly contradict Plaintiff's allegations.

### A.  Factual Background

This case concerns the sale of a residence located at 13 Evarts St. N.E., Washington, DC (the "Property"). Compl. ¶ 2. On or about January 26, 2012, Defendant Spicer HB purchased the Property in unfinished condition. Compl. ¶ 12. Defendant Spicer is the principal of Spicer HB. *Id.* ¶ 6. After purchasing the Property, the Defendant Spicer HB performed extensive renovations, including modification of the first floor bathroom, building a second-floor bathroom, installation of new kitchen cabinets and appliances in the basement, an addition, and

construction of a new deck with a fence and concrete pad on the rear of the Property. *Id.* ¶¶ 14, 35. On or about April 19, 2012, Defendant listed the Property for sale as a complete renovation; later that day Plaintiff entered into a standard GCAAR Regional Sales Contract (Sales Contract) with Defendant for the purchase of the Property. *Id.* ¶¶ 15, 17. The Sales Contract includes a standard integration clause. *Id.*, Ex. 4, ¶ 31. The Sales Contract included a General Addendum, dated April 19, 2012, which included a term stipulating that "the materials used in completetion [*sic*] of this home will be equal to the quality, price, etc. of the materials used on the following renovated homes: 107 Rock Creek Church Road NW, 2914 New Hampshire Ave. NW and 638 Farragut Street NW." *Id.* ¶ 20; *id.*, Ex. 5. Plaintiff expressly selected several contingencies—a home inspection contingency, a radon contingency, and an appraisal contingency—and made the purchase of the home contingent on those clauses. *Id.*, Ex. 5 (Addendum of Clauses).

The parties also jointly ratified a Washington, DC Jurisdictional Addendum ("Jurisdictional Addendum") to the Sales Contract. *Id.*, Ex. 5 at 27 (Jurisdictional Addendum). The Sales Contract explicitly incorporated the Jurisdictional Addendum, providing that the Jurisdictional Addendum, "if ratified and attached, is made part of this [Sales] Contract." *Id.*, Ex. 5 (Sales Contract), at 1. The Jurisdictional Addendum references the Disclosure Statement, providing that "the Buyer is entitled to a Seller's Disclosure Statement." *Id.*, Ex. 5 (Jurisdictional Addendum), at 1. The Jurisdictional Statement states that Buyer had not yet received the Disclosure Statement as of April 18, 2012 (the date of the Sales Contract). *Id.* On or about April 20, 2012, Defendant prepared and signed a GCAAR Seller's Disclosure Statement (Disclosure Statement), pursuant to D.C. Code § 42-1301, which Plaintiff reviewed and countersigned on April 30, 2012. *Id.* ¶ 21; *id.*, Ex. 6. In the Disclosure Statement, Defendant Spicer represented on behalf of Spicer HB, LLC, that, among other things, that it had no "actual knowledge" of defects

relating to structural conditions of the roof, basement, walls, floors, plumbing, and other facilities. *Id.* ¶ 22; *id.*, ex. 6 (Disclosure Statement). Notably, however, the Disclosure Statement states that it "is a disclosure only," "not intended to be a part of any contract between Buyer and Seller," "NOT A WARRANTY OF ANY KIND BY THE SELLER," and "NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN." *Id.*, Ex. 6 at 3 (emphasis in original).

On June 27, 2012, Plaintiff engaged the services of Gum Bay Home Inspection Services ("Gum Bay Home") to perform a pre-settlement inspection of the Property. Compl. at ¶ 23. Gum Bay Home claimed they could not inspect the roof, exterior, foundation, deck, or stairs of the Property because of ongoing construction in those areas by Spicer HB. *Id.* Pursuant to Gum Bay Home's inspection report, Plaintiff and Defendant ratified a second addendum (June Addendum) detailing Spicer HB's obligation to make certain repairs as recommended by the inspection report. *Id.* ¶ 24; *id.*, Ex. 8 (June Addendum). On June 29, 2012, Plaintiff and Spicer HB closed on the Property. *Id.* ¶ 27.

For two weeks following settlement on the Property, Defendant continued to perform work on the Property, before abandoning the project with several repairs incomplete, and stopped all communication with Plaintiff. *Id.* ¶ 28. A year later, in July 2013, Plaintiff contacted Defendants regarding a water leak from the upstairs bathroom that was dripping into the living room. *Id.* ¶ 29. Defendants sent a Spicer HB employee to retile the bathroom, though the cause of the leak and the underlying damage were not remedied. *Id.* Plaintiff's real estate agent emailed Defendant three times in August and September 2013 requesting Defendant to contact Plaintiff regarding the list of repairs. *Id.* ¶¶ 30-33. Defendant did not respond to these emails. *Id.* ¶ 34.

On October 21, 2013, Plaintiff observed water leaking through one of the pocket doors between the original home and the new addition built by Defendant. *Id.* ¶ 35. Plaintiff hired a roofing contractor to find the source of the leak; the contractor determined it was caused by an improperly installed roof membrane and flashing. *Id.* ¶ 36. The contractor estimated the cost of repair to be over $12,000. *Id.* Plaintiff hired another contractor to inspect the rest of the house; the contractor identified several issues with the Property including lack of proper flashing, an improperly sloped drain pipe, cracked posts under the deck, and other concerns. *Id.* ¶¶ 38-39. Another contractor estimated that the cost of repairing these issues would be $8,050. *Id.* ¶ 40.

### B.  Procedural Background

Plaintiff filed suit in the District of Columbia Superior Court on December 15, 2014, bringing several claims pursuant to District of Columbia law. Specifically, Plaintiff brought claims for breach of contract (Count I), *id.* ¶¶ 43-54; breach of warranty (Count II), *id.* ¶¶ 55-61, breach of implied covenant of good faith and fair dealing (Count III), *id.* ¶¶ 62-70; negligent misrepresentation (Count IV), *id.* ¶¶ 71-80; negligence per se (Count V), *id.* ¶¶ 81-88; negligence (Count VII), *id.* ¶¶ 89-95; fraudulent misrepresentation (Count VIII), *id.* ¶¶ 96-104; unlawful trade practices (Count IX), *id.* ¶¶ 105-110; and alter ego liability (Count X), *id.* ¶¶ 111-119. On February 18, 2015, Defendants removed the lawsuit to this Court. *Id.* Defendants subsequently filed a Motion to Dismiss, requesting that each of the claims remaining in this action be dismissed. That Motion is now ripe for review.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall Cnty. HealthCare Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

## III. DISCUSSION

Defendants move to dismiss each of the claims in the Complaint. In light of the analysis below, the Court concludes that certain of the claims must be dismissed and that others survive the motion to dismiss, as explained below.

As an initial matter, the Court addresses a matter generally applicable to the parties' disputes regarding the several claims in this action. Plaintiff relies heavily on *Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000 (D.C. 2013), and on *Jefferson v. Collins*, 905 F. Supp. 2d 269 (D.D.C. 2012), in opposing the pending motion to dismiss. *See* Pls.' Opp'n, Table of Authorities (indicating that Plaintiff "chiefly relies" on these cases). At the outset, it is important to explain that those cases are readily distinguishable from the one before the Court. In *Jefferson*, another district judge in this district granted in part and denied in part the defendants' motion to dismiss in a case regarding a home renovation project gone awry. 905 F. Supp. 2d at 274. While the underlying facts in that case bear *some* resemblance to those in the case before this Court,

there are two fundamental differences between the two cases that explain why *Jefferson*, as a whole, has little bearing on the currently pending motion to dismiss. First, Plaintiff in this case attached to his Complaint the Sales Contract and other addenda, including the Disclosure Statement. Accordingly, as explained above, the Court looks to the language of those documents in resolving the issues in this case. However, in *Jefferson*, neither the plaintiff nor the defendants appear to have attached the sales contract or other relevant documents; accordingly, that judge was required to assume the truth of well-pleaded allegations in the complaint—regardless of the actual language of the documents themselves. *See* 905 F. Supp. 2d at 274. Second, it appears from the district court's resolution of that case that the *Jefferson* defendants raised different arguments in favor of dismissal. For instance, one of the defendants in that case argued that certain defects occurred after delivery of the home; that the plaintiffs waived any objections by accepting the property with defects; and that defendant's obligations were satisfied upon delivery and acceptance of the deed. *See id.* at 280-284. Those arguments are not raised in this case. Nor does it appear that arguments that are central to the Court's resolution of this case, such as the reasonableness of reliance on the Disclosure Statement, were raised in *Jefferson*. *See generally id.* The *Jefferson* court's resolution of the motion dismiss before it was limited to the arguments presented in the briefing on that motion and simply does not indicate the proper resolution of the arguments before this Court. That is to say, just because the *Jefferson* court concluded that a certain claim survived the motion to dismiss in that case does not mean that an analogous claim in this action would survive the pending motion to dismiss. Where the facts and the legal arguments before the Court differ—as is true in comparing these two cases—the legal outcomes will differ, as well.

Similarly, *Wetzel* is distinguishable. *Wetzel* pertains to the purchase of a condominium unit, 73 A.3d at 1002, whereas this case pertains to the purchase of property in fee simple, without any connection to a condominium-related transaction, Compl., Ex. 2. Therefore, while certain documents relating to the underlying sale were attached to the complaint in *Wetzel*, those documents governing that sale differed from those relevant to this case. *See* 73 A.3d at 1002 (Condominium Unit Purchase Agreement and Public Offering Statement attached to *Wetzel* Complaint). Accordingly, the legal meaning that attached to those documents necessarily differs from the legal meaning of the documents attached in this case. In addition, in *Wetzel*, plaintiffs were the beneficiaries of a limited warranty, *see* 73 A.3d at 1005, whereas Plaintiff in the case before the Court has not identified any warranties of which he is a beneficiary. Lastly, as the Court explained in regards to *Jefferson*, above, the legal arguments presented to the D.C. Court of Appeals in *Wetzel* differ from those presented in the motion to dismiss before this Court. Nevertheless, as a product of the District of Columbia Court of Appeals, *Wetzel* contains definitive statements of District of Columbia law that are binding on this Court. However, the appellate court's resolution of the particular issues before it does not indicate the proper resolution of the issues raised by the pending motion to dismiss in this case. Once again, where the facts and the legal arguments differ, the resolution of the claims will be different as well. In that light, the Court proceeds to consider the parties' arguments regarding each of the claims subject to Defendants' motion to dismiss.

## A.  Breach of Contract (Count I)

Plaintiff alleges that Defendants breached the material terms of the Sales Contract when Defendants (1) failed to deliver the Property in the promised condition and free from defects; (2) failed to disclose known defects with the Property; and (3) failed to complete the renovations as

promised. Compl. ¶ 52. For this claim, Plaintiff relies on the terms of the Sales Contract, as well as representations made in the Disclosure Statement provided to Plaintiff prior to closing. Defendants argue that the Complaint fails to state a claim for breach of contract because the claim in the Complaint is materially inconsistent with the documentary record incorporated into the Complaint. Defendants also argue that the Sales Contract's integration clause bars consideration of any representations in the Disclosure Statement—or elsewhere—because the Disclosure Statement is not explicitly incorporated into the Sales Contract.

To state a claim for breach of contract, a plaintiff must allege: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Wetzel*, 73 A.3d at 1005. The Court agrees with Defendants that Plaintiff's breach of contract claim must be dismissed with respect to the failure to deliver the Property in the promised defect-free condition and the failure to disclose because Plaintiff has failed to identify an obligation or duty arising out of the Sales Contract that was breached by Defendants. However, the Court agrees with Plaintiff that the Complaint states a claim for a breach of contract with respect to the failure to complete the renovations.

### 1.   Sales Contract's Plain Language

With respect to the claim that Defendants breached a contractual duty in failing to complete promised renovations, the Court agrees with Plaintiff that the Complaint states a claim for breach of contract. The General Addendum to the Sales Contract, signed April 19, 2012, includes the following language:

> As discussed with Matt Spicer on 4/18/2012 the materials used in completetion [*sic*] of the this home will be equal to the quality, price, etc. of the materials used on the following renovated homes: 107 Rock Creek Church Road NW, 2914 New Hampshire Ave. NW and 638 Farragut Street NW.

Compl., Ex. 5, at 1 (General Addendum). This clause clearly indicates that work remains to be done on the Property; otherwise, there would be no need to specify the quality and price of the materials yet to be used. Defendants point to the following language also in the April 19, 2012, General Addendum in arguing that the remaining work is wholly speculative:

> Additional work in basement will be decided by purchaser and Matt at end of build. Matt quoted the price to be $6K. Both buyer and seller will come to an agreement as to what that would entail.

*Id.* The Court disagrees with Defendants' interpretation. This language indicates that *additional* basement work may or may not occur, but it does not indicate that there is no other agreed-upon work that remains to be finished. To the contrary, the reference to the "end of the build" suggests that there was work—unrelated to potential additional work in the basement—that was not yet completed when the April 19, 2012, General Addendum was signed. Defendant also looks to the language of the addendum stating, "Purchaser discussed the possibility of exposed brick in several places. Seller will check on brick and give quote as to what can and can't be done." *Id.* While this language indicates that there remained some unknowns regarding work to be done, it also strongly indicates that the parties had agreed on specific additional work to be done and that the possibility of brick was simply one option in the context of an otherwise existing agreement to complete the work. The Court concludes that the language of the April 19, 2012, General Addendum constitutes a promise by Defendants to complete the renovations on the Property. Plaintiff has adequately alleged that Defendants breached this duty when they failed to complete the work on the Property. The Court denies Defendants' motion as to this portion of the breach of contract claim.

However, the plain text of the Sales Contract does not support Plaintiff's breach of contract allegations with respect to the failure to deliver the Property as promised and in a defect free condition or the failure to disclose defects in the Disclosure Statement. With respect to the

former claim, as Defendants argue, the Court concludes that Plaintiff does not identify any clauses in the Sales Contract that support this claim. Because Plaintiff has attached the Sale Contract and the supporting addenda to the Complaint, the Court relies on these documents evaluating the language of the contract where these documents contradict the allegations in the Complaint, as explained above. The only relevant representation in the Sales Contract as to the condition of the Property is a clause stating that "Seller will deliver the Property free and clear of trash and debris, broom clean and *in substantially the same physical condition to be determined as of Contract Date*." *Id.* (emphasis added). Plaintiff does not allege that the Property was in violation of any of those conditions at the time of the Sales Contract execution. Accordingly, because Plaintiff has identified no language in the Complaint that would support these claims— and the Court has found none—the Court concludes that the plain language of the contract does not support the claim that the Defendants failed to deliver the property in a certain condition and the claim that Defendants failed to disclose certain defects. The Court next looks to Plaintiff's other arguments in support of the breach of contract claim.

## 2.  Disclosure Statement

Notwithstanding the language of the Sales Contract itself, Plaintiff contends that the Disclosure Statement that Defendants provided Plaintiff prior to the sale included representations about the condition of the Property that were incorporated into the Sales Contract. Plaintiff alleges that Defendants breached the Sales Contract by failing to disclose actual knowledge of defects regarding the "roof (including evidence of moisture or leaks), wall and floors, basement, plumbing system, and exterior drainage system)." Compl. ¶ 49. Plaintiff contends that the Disclosure Statement was incorporated into the Sales Contract via the Jurisdictional Addendum. The Court agrees that the Jurisdictional Addendum is incorporated into the Sales Contract. *See*

*Id.*, Ex. 5, at 5 ("The Contract of Sale … is hereby amended by the incorporation of this addendum"). The Jurisdictional Addendum, however, does not incorporate the Seller's Disclosure Statement. It is true that the Jurisdictional Addendum references the Seller's Disclosure Statement, stating, "Pursuant to D.C. Code §42-1302, prior to the submission of the offer the Buyer is entitled to a Seller's Disclosure Statement (if the Seller is not exempt), and hereby acknowledges receipt of the same." *Id.* On that form, the parties noted that the Disclosure Statement had not been provided as of the signing of the Jurisdictional Addendum. *Id.* The Court disagrees that the form—including the statement that the Disclosure Statement had not yet been received—incorporates the Disclosure Statement into the Sales Contract. The form indicates only that (1) Defendants were required to complete a Disclosure Statement, pursuant to a duty under D.C. law that was independent of the contract between the parties, and that (2) Defendants had not yet delivered that document to Plaintiff—nothing more. *See Rock v. Voshell*, 397 F. Supp. 2d 616, 623 (E.D. Pa. 2005) (finding that a similar Jurisdictional Addendum provision acknowledging that "Buyer has received a Seller's Property Disclosure Statement before signing this agreement" indicated "receipt of that Statement and nothing more").

In arguing that a duty to fill out the Disclosure Statement in good faith is incorporated into the Sales Contract, Plaintiff relies only on the principle that all terms of the contract must be given meaning. *See, e.g., 1010 Potomac Assocs. v. Grocery Mfrs. Of America, Inc.*, 485 A.2d 199, 205-206 (D.C. 1984). But it is Plaintiff's interpretation that fails to give meaning to the explicit language of the Disclosure Statement that "[t]his information is a disclosure only and is not intended to be a part of *any contract* between Buyer and Seller." Compl., Ex. 6 (Disclosure Statement), at 1 (emphasis added). Moreover, the Disclosure Statement is explicit as to its purpose:

> Purpose of Statement: This Statement is a disclosure by the Seller of the defects or information actually known by the Seller concerning the property, in compliance with the District of Columbia Residential Real Property Seller Disclosure Act. Unless otherwise advised, the Seller does not possess an expertise in construction, architecture, engineering, or any other specific area related to the construction of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

Compl., Ex. 6 (Disclosure Statement), at 3 (emphasis in original). The Disclosure Statement is plainly not intended to be part of the Sales Contract.

Accordingly, the Court concludes that the Defendants have not incorporated into the Sales Contract a promise to complete in good faith information in the Disclosure Statement relating to the condition of the property and that the Disclosure Statement is not otherwise incorporated into the contract. Consequently, whether the Court may consider the Disclosure Statement in resolving Plaintiff's breach of contract claim is governed by the parol evidence rule, which the Court considers next.

### 3.  Parol Evidence

It is unclear whether Plaintiff is urging the Court to consider the representations in the Disclosure Statement—even if the Disclosure Statement has not been incorporated into the contract by reference—as parol evidence. However, the Court concludes that, even if Plaintiff is suggesting that the Disclosure Statement or other materials should be considered with respect to the breach of contract claim, the Court concludes that those materials are barred by the parol evidence rule

The parol evidence rule provides that when parties to a contract have executed a (1) completely integrated written agreement with (2) terms that are plain and unambiguous, no

evidence of prior or contemporaneous agreements or negotiations may be admitted which would either contradict or add to the writing. *Ozerol v. Howard Univ.*, 545 A.2d 638, 641 (D.C. 1988), *petition for rehearing granted and remanded on other grounds*, 555 A.2d 1033 (D.C. 1989). The District of Columbia follows the " 'objective' law of contracts, which generally means that 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake.' " *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 278 (D.C. Cir. 2014) (quoting *DSP Venture Grp., Inc. v. Allen*, 830 A.2d 850, 852 (D.C. 2003)). "[E]xtrinsic or parol evidence which tends to contradict, vary, add to, or subtract from the terms of a written contract must be excluded." *Segal Wholesale, Inc. v. United Drug Serv.*, 933 A.2d 780, 783 (D.C. 2007) (citation omitted). "This rule applies with even greater force if the contract contains a clause—usually referred to as a 'merger clause' or an 'integration clause'—indicating that the contract represents a complete and final expression of the parties' wishes." *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 113 (D.D.C. 2013) (citing *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 928, n.17 (D.C. 1992)). Only if the court finds that "the contract has more than one reasonable interpretation and therefore is ambiguous," can the court consider extrinsic or parol evidence to "determine what a reasonable person in the position of the parties would have thought the disputed language meant." *Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1171, 1176 (D.C. 2006).

Defendants argue that the Sale Contract is a fully integrated contract. Other than arguing that the Disclosure Statement should be considered incorporated into the Sales Contract, Plaintiff does not contest this conclusion. The Court agrees that the contract is fully integrated. First and

foremost, the Sales Contract contains an integration clause: "This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained." Compl., Ex. 4 (Sales Contract), ¶ 31. Moreover, the use of a standard form contract—a Greater Capital Area Association of Realtors ("GCAAR") Regional Sales Contract—is further evidence that the contract is completely integrated. *See Hercules*, 613 A.2d at 928 (use of a standard form contract as evidence of complete integration). The Court concludes that the detailed written agreement, signed by the parties, is fully integrated. Accordingly, parol evidence—including the Disclosure Statement—may not be admitted to contradict, vary, add to, or subtract from the terms of the Sales Contract. *See Segal Wholesale, Inc.*, 933 A.2d at 783.

Accordingly, the Court finds that Plaintiff has identified no language in Sales Contract that can serve as the proper foundation for a breach of contract claim with respect to a duty to deliver the property in certain promised condition and in a defect free condition. Concomitantly, the Court finds that the Disclosure Statement is not a part of the Sales Contract and that the parol evidence rule bars consideration of any extrinsic evidence on which Plaintiff may seek to rely. Therefore, the Court concludes that Plaintiff has failed to state a claim for breach of contract except as it applies to a duty to complete the renovations.

## B.  Breach of Warranty Claim (Count II)

Plaintiff next claims that "[i]n listing, offering to sell, and selling the Property to Plaintiff, Defendant made explicit and implicit representations, warranties, assurances and statements that the Property was safe and fit for habitation, and would not expose Plaintiff to an unreasonable danger or risk to life, health and safety." Compl. ¶ 56. Plaintiff further alleges Defendant made further representations, warranties, assurances and statements that the Property was renovated in

compliance with the District of Columbia Code and other applicable statutes, laws, regulations, and code provisions." *Id.* Plaintiff finally alleges that he relied on these representations in purchasing the Property and was damaged as a result. *Id.* ¶¶ 57-61. Plaintiff identifies three categories of representations on which he purportedly relied in purchasing the property. First, he identifies the listing that Defendants posted through the Multiple Listing Service advertising the sale of the property as a warranty as to the nature and quality of the Property being sold. *Id.* ¶ 56(a). Second, he identifies the Disclosure Statement as a source of a warranty regarding the condition of the property. *Id.* ¶ 56(b). Third, Plaintiff points to representations regarding the completion of work on the Property and regarding the quality of the completion of that work. *Id.* ¶ 56(c). The Court concludes that the language that Plaintiff identifies does not create a warranty on which he can now rely.

The Sales Contract's integration clause expressly disclaims any "warranties" not contained in the Contract. *Id.*, Ex. 5 ¶ 31. Similarly, the Deed provides for no warranty other than good title. *See* Compl., Ex. 1, at 1. As discussed above, the Disclosure Statement was not made part of the Sales Contract either explicitly or implicitly, but, in any event, the Disclosure Statement unambiguously disclaims the creation of any warranty:

> THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

Compl., Ex. 6 (Disclosure Statement), at 3; *see also id.* ("[T]his is not a warranty."); *id.* (Plaintiff's signature acknowledges that "[t]his disclosure is not a substitute for any inspections or warranties which the buyer(s) may wish to obtain" and that Disclosure Statement "is NOT a statement, representation, or warranty by any of the seller's agents or sub-agents as to the presence or absence of any condition, defect or malfunction or as to the nature of any condition,

defect or malfunction."). Since the Sales Contract does not contain any warranties and because any representations not contained in the Sales Contract are barred by the parol evidence rule, the Court concludes that Plaintiff has not—and cannot—identify any warranty breached by Defendants. *See Knieper v. United States*, 38 Fed. Cl. 128, 137-38 (1997). As a result, Plaintiff's breach of warranty claim must be dismissed.

**C.  Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)**

Next, Plaintiff claims Defendants breached the implied covenant of good faith and fair dealing with respect to the Sales Contract by failing to complete renovations on the property, by "by making false representations that all renovations and repairs to the Property were made in a workmanlike fashion, and in accordance with all applicable Building Codes and building standards," and "by making false representations on the Disclosure Statement that Defendants had no actual knowledge of any defects in the Property." Comp. ¶¶ 64-66.

" '[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.' " *Himmelstein v. Comcast of the Dist., LLC*, 908 F. Supp. 2d 49, 53 (D.D.C. 2012) (quoting *Hais v. Smith,* 547 A.2d 986, 987 (D.C. 1988)).  "A party may be liable for a breach of this duty if it 'evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party.' " *Id.* (quoting *Paul v. Howard Univ.,* 754 A.2d 297, 310 (D.C. 2000)). However, the covenant of good faith and fair dealing is generally inapplicable to negotiations prior to the formation of the contract, absent narrow circumstances such as when the parties agree to a letter of intent or explicitly request reassurances. *See Abdelrhman v. Ackerman*, 76 A.3d 883, 892 n.8 (D.C. 2013).

The Court agrees with Defendants that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails with respect to the claims regarding defects that resulted from renovations to the property. Defendant did not breach any duty of good faith and fair dealing resulting from the Sales Contract itself because the Sales Contract itself did not include any general assurances about the property's condition. Similarly, because the Court concluded above that the Disclosure Statement was not incorporated into the Sales Contract and because the Court concluded that the Court could not consider the Disclosure Statement as parol evidence, the Disclosure Statement cannot be the basis for a claim for breach of the implied duty of good faith and fair dealing. Moreover, since the Disclosure Statement was signed during negotiations over the contract, prior to the parties' closing on the sale, Defendants' completion of that statement—regardless of their actual knowledge about the state of the property—cannot be the basis for a breach of an implied duty of good faith and fair dealing regarding the Sales Contract. *See Abdelrhman*, 76 A.3d at 892 n.8. Ultimately, the relevant question in a claim concerning the duty of good faith and fair dealing is whether a party's actions "destroy[] or injur[e] the right of the other party to receive the fruits of the contract." *See Hais,* 547 A.2d at 987 (citation and quotation marks omitted). Here, Plaintiff did not contract for any particular assurances about the quality of the renovations, and therefore cannot claim that he did not receive the benefit of the bargain as a result of the defects with the Property. Accordingly, the Court concludes that Plaintiff has failed to state a claim for breach of implied covenant of good faith and fair dealing with respect to the claims resulting from problems with the renovations of the property.

By contrast, the Court agrees with Plaintiff that the Complaint adequately states a claim with respect to the claim that Defendants breached the implied covenant of good faith and fair

dealing as result of the failure to complete renovations on the Property. As discussed above with respect to the breach of contract claim, the Court concludes that the Sales Contract includes a promise to complete the renovations. Plaintiff has adequately alleged that Defendants failed to complete the renovations, thus destroying the value of the bargain into which they entered. The Court, therefore, denies Defendants' motion to dismiss as to this portion of the implied covenant of good faith and fair dealing claim.

### D.  Fraudulent Misrepresentation (Count VIII)

Plaintiff alleges that Defendants are liable for fraudulent misrepresentation primarily as a result of several statements in the Disclosure Statement regarding knowledge of defects on the property. Compl. ¶¶ 97-98. Plaintiff also claims that Defendants are liable for fraudulent misrepresentation because Defendants "represented to Plaintiff that renovations to the Property would continue after settlement, and that such renovations would continue until completed, and would be made in a workmanlike fashion and in compliance with all applicable Building Codes and regulations." *Id.* ¶ 97(c). The Court agrees with Defendants that the Complaint fails to state a claim for fraudulent misrepresentation.

" 'In order to prove fraudulent misrepresentation, a plaintiff must prove (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken ... in reliance upon the representation, (6) which consequently resulted in provable damages.' " *Wetzel*, 73 A.3d at 1002-03 (quoting *Kumar v. District of Columbia Water & Sewer Auth.,* 25 A.3d 9, 15 (D.C. 2011) (alteration in original)). And, "[a]t least in cases involving commercial contracts negotiated at arm's length, there is the

further requirement (6) that the defrauded party's reliance be *reasonable*."[2] *Drake*, 993 A.2d at 622 (quoting *Hercules,* 613 A.2d at 923) (emphasis in original).

With respect to the Disclosure Statement, the Court finds that Plaintiff has not sufficiently alleged reasonable reliance and that the representations in the Disclosure Statement are not material facts in connection with Plaintiff's decision to enter into the Sales Contract. With respect to the failure to complete renovations, the Court concludes that Plaintiff has not identified any representations regarding the completion of the renovations that could serves as the basis for a fraudulent misrepresentation claim.[3]

Plaintiff alleges he relied on the representations in the disclosure statement in signing the contract. However, the Court concludes that, not only was reliance on those statements unreasonable as a matter of law, but those statements were not material to the decision to enter into the contract given the content of the contract and the nature of the Disclosure Statement. As discussed above, the Disclosure Statement is not a part of the Sales Contract. The Disclosure Statement itself emphasized that it was not a warranty and that it was not part of the Sales Contract. *See* Compl, Ex. 6 (Disclosure Statement), at 3. Accordingly, the sellers' representations about their knowledge were legally immaterial to the decision to buy the property and any reliance on them was unreasonable. *Cf. Hercules,* 613 A.2d at 929 ("if a judge concludes that a particular representation was superseded by the writing, 'he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally

---

[2] Plaintiff does not dispute that this is a commercial contract, negotiated at arm's length.

[3] In his Opposition, Plaintiff references the Defendant blocking access to the inspectors as a basis for the fraudulent misrepresentation claim. *See* Pl.'s Opp'n at 13. However, nowhere in the Complaint does Plaintiff identify the blocking of inspectors as the basis for the fraudulent misrepresentation or negligent misrepresentation claims. *See* Compl. ¶¶ 96-104. Plaintiff may not amend his complaint through his Opposition, and the Court does not consider the blocking of access for inspectors to be a basis for the fraudulent misrepresentation claim.

immaterial.'") (citing *Luther Williams, Jr., Inc. v. Johnson,* 229 A.2d 163, 165–66 (D.C. 1967) (emphasis in original)).

Furthermore, any purported reliance on the Disclosure Statement was additionally unreasonable given that Plaintiff in fact obtained a home inspection, as well as the language of the contract warning that terms outside the Sales Contract were not binding. The Sales Contract cautions that "Purchaser and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements." *Id.,* Ex. 4, ¶ 24. The Sales Contract even warns that "[v]arious inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues including without limitation … mold … [and] asbestos." *Id.*, Ex. 4, ¶ 24(A). Additionally, the Sales Contract's integration clause expressly states that "the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained." *Id.*, Ex. 4 ¶ 31. Finally, the Disclosure Statement itself explicitly states (1) that it "is a disclosure only and is not intended to be a part of *any contract* between Buyer and Seller," Compl. Ex. 6 (Disclosure Statement), at 3 (emphasis added); and (2) that "THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN," *id.* In short, Plaintiff obtained a home inspection, which could have revealed the alleged defects in the Property's condition, and he could rely on that inspection to insure the quality of the property; he may not now claim reliance on a document that on its face said it could not be relied on. As the D.C. Court of Appeals stated in *Hercules,* "[o]ne cannot close his eyes and blindly rely upon the assurances of another absent some fiduciary relationship or emergency." 613 A.2d at 934 (citation omitted). Accordingly, the

Court finds that the representations contained in the Disclosure Statement are not legally material and that Plaintiff's reliance on those representations was unreasonable. As a result, with respect to the Disclosure Statement, the Complaint fails to state a claim for fraudulent misrepresentation.

With respect to a claim that Defendants falsely misrepresented that they would complete the renovations, Plaintiff wholly fails to identify when or in what circumstances Defendants made these representations. *See* Compl. ¶¶ 96-104. In Plaintiff's Opposition, Plaintiff identifies the April 19, 2015, General Addendum, which the parties signed, as the source of this claim. However, Plaintiff may not amend his Complaint through his Opposition. *See Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22, 29 (D.D.C. 2012) (citing cases). Moreover, that claim would simply be duplicative of his contract claim, which the Court concluded above survives the pending motion to dismiss. Yet, "conduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim when there are facts *separable from* the terms of the contract upon which the tort may independently rest and when there is a duty *independent of* that arising out of the contract itself, so that an action for breach of contract would reach none of the damages suffered by the tort." *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008) (emphasis added). Here, however, Plaintiff does not point to any facts "separable from the terms of the contract" on which the tort claim could "independently rest." *Id.* Nor does Plaintiff identify a "duty independent of that arising out of the contract itself" as the basis for the fraudulent representation claim. *Id.* (emphasis added). Therefore, the Court would the Court would dismiss the fraudulent misrepresentation claim with respect to the failure to complete renovations on this basis as well. Accordingly, the Court dismisses the fraudulent misrepresentation claim in its entirety.

### E.   Negligent Misrepresentation (Count IV)

Plaintiff claims that Defendants are liable for negligent misrepresentation based on the same allegations as the fraudulent misrepresentation claim. Pl.'s Opp'n at 21; *see also* Compl. ¶¶ 71-80. Under District of Columbia law, a plaintiff alleging negligent misrepresentations or omissions must show (1) the defendant made a false statement or omission of a fact, (2) the statement or omission was in violation of a duty to exercise reasonable care, (3) the false statement or omission involved a material issue, and (4) the plaintiffs reasonably and to their detriment relied on the false information. *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015). That is, the elements of a negligent misrepresentation claim are the same as those of a fraudulent misrepresentation claim, except a negligent misrepresentation claim does not include the state of mind requirements of fraud. *See Parr v. Ebrahimian*, 774 F. Supp. 2d 234, 240 (D.D.C. 2011) (citing *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999)). For the same reasons that the Court concludes that Plaintiff's fraudulent misrepresentation claim fails, the Court concludes that Plaintiff has failed to state a claim for negligent misrepresentation because his reliance on the representations in the Disclosure Statement was not reasonable, because the representations in the Disclosure Statement were not legally material to the decision to enter into the Sales Contract, and because Plaintiff has not identified any representations that can serve as the basis for a misrepresentation claim regarding the completion of renovations. This claim is dismissed as well.

### F.   Negligence Per Se (Count V)

" 'To prevail on a negligence *per se* theory, the plaintiff may, in certain circumstances and under specified conditions [,] rely on a statute or regulation as proof of the applicable standard of

care.' " *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014) (quoting *Clark v. District of Columbia,* 708 A.2d 632, 636 (D.C. 1997)) (alterations in original).

Plaintiff's negligence per se claim relies on the argument that D.C. Code §§ 42-1305 and 42-1306—which mandate the Seller's Disclosure Statement—establish the relevant standard of care, and therefore that Defendants breached that duty when they, allegedly, failed to comply with those regulations. Specifically, Plaintiff claims that Defendants are liable for negligence per se because "they failed to disclose to Plaintiff on the Disclosure Statement the Property's known defects, and falsely stated there were no such known defects, when in fact there were structural, roof, plumbing, and drainage defects on the Property." Compl. ¶ 85. Plaintiff further alleges that he reasonably relied on these disclosures—or the lack thereof—in entering into the Sales Contract. *Id.* ¶ 86. While Defendants look to the statute to establish the duty and standard of care applicable to Defendants and look to purported violations of this statute to establish a breach of that duty, this negligence per se claim is essentially a duplicate of the negligent misrepresentation claim discussed above. Accordingly, notwithstanding Defendants' reliance on the statute, this claim fails because the Disclosure Statement—and any omission of disclosures from that statement—could not be legally material regarding Plaintiff's decision to enter into the Sales Contract, and Plaintiff could not reasonably rely on those disclosures in choosing to do so.[4]

## G.  Negligence (Count VII)

Next, Plaintiff claims that Defendants are liable in negligence because "Defendants, as professionals in the real estate construction business, had a duty to perform the construction, renovations, and repairs to the Property in a workmanlike manner, and to disclose any known

---

[4] Because the Court concludes that the negligence per se claim fails for the same reasons as the negligent misrepresentation claim, it need not consider Defendants' alternative arguments for dismissing this claim.

material defects of the Property to Plaintiff at or before the time of Settlement." *Id.* ¶ 90. Plaintiff

alleges that Defendants breached this duty when they failed to disclose—or concealed—

knowledge of defects at the time of sale and due to the manner in which they conducted the

renovations. *See id.* ¶¶ 91-94. Defendant argues that this claim is barred by the economic loss

rule given that the only relationship between the parties is their contractual relationship. Def.'s

Mot. at 21-22. Plaintiff appears to respond that duties exist between the parties separate from the

provisions of the contract.[5] The Court addresses, in turn, the two aspects of Plaintiff's negligence

claim.

With respect to the claim that Plaintiff breached a duty as a result of the failure to

disclose knowledge of defects, this claim is entirely duplicative of the negligent

misrepresentation claim. Therefore, the Court dismisses that portion of the negligence claim for

the same reasons that the Court dismisses the negligent misrepresentation claim, as explained

above. Moreover, the Court notes that Plaintiff points to nothing to suggest that Defendants

duties with respect to the disclosure statement are different because they are professionals, and

accordingly any statutory duty with respect to the disclosure statement cannot serve as the basis

for a negligence claim for the reasons the Court explains above.

With respect to the claim that Plaintiff breached a duty *as a real estate professional* to

"perform the construction, renovations, and repairs to the Property in a workmanlike manner,"

Compl. ¶ 90, Plaintiff once again points to no source of law that would create such a duty outside

of the contractual relationship between the parties. Because "there are [no] facts separable from

---

[5] The Court notes that, while Plaintiff explicitly responds to Defendants' arguments regarding the negligence per se claim and the negligent misrepresentation claim, Plaintiff does not include any direct response with respect to the "simple" negligence claim. See Pl.'s Opp'n at 20-22. However, the Court will presume that Plaintiff's general arguments regarding all three negligence claims are applicable to the "simple" negligence claim.

the terms of the contract upon which the tort may independently rest and … there is [no] duty

independent of that arising out of the contract itself," Plaintiff cannot recover in tort for damages

suffered as a result of the contractual relationship. *Choharis*, 961 A.2d at 1089.

For all of these reasons, the Court dismisses Plaintiff's "simple" negligence claim against

Defendants as well.

### H.  Unlawful Trade Practices (Count IX)

Plaintiff's also claims that Defendants are liable for committing unlawful trade practices

in violation of D.C. Code § 28-3904 (d)-(f) when

> Defendant Spicer (i) represented that his construction and remodeling services
> performed were of the quality of a licensed professional, (ii) he materially
> misrepresented that he would provide to Plaintiff: post-settlement, a fully
> renovated Property that was of a habitable condition free from defects and
> hazards, and (iii) when he promised to complete repairs contained in the Sales
> Contract Addendum after settlement, all of which induced Plaintiff into entering
> into the Sales Contract.

Compl. ¶ 108. Plaintiff also claims that Defendants committed unlawful trade practices when

they failed to disclose certain defects in the Seller's Disclosure Statement. *Id.* ¶ 109. Defendants

argue that Plaintiff has not plead this claim with particularity as required pursuant to Federal

Rule of Civil Procedure 9(b).

With respect to the claims that Defendant represented that his services "were of the

quality of a licensed professional" and that he would provide "a fully renovated Property that

was of a habitable condition free from defects and hazards," the Court agrees with Defendants

that Plaintiff has not identified when Defendants made the purported representations. The

conclusory allegations in the Complaint that Plaintiff identifies are insufficient in that they do not

identify anything about when or how such representations were made. With respect to the

representation that Defendants promised to complete the repairs as stated in the Sales Contract

Addendum, the Court concludes that Plaintiff has sufficiently identified when the representation was made by pointing to the addendum itself. *See id.* ¶ 108. As the Court explained above, the Court concludes that the April 19, 2012, General Addendum contains a promise to complete renovations on the Property. The Court concludes that this representation is also sufficient to serve as the basis for an unlawful trade practices claims. With respect to the claim regarding the failure to disclose certain defects, the Court also concludes that Plaintiff has sufficiently alleged details regarding the making of such a representation: Plaintiff alleges that it was made in Disclosure Statement itself. The Court agrees with Plaintiff that the Disclosure Statement may serve as the basis for an unfair trade practice claims.

For all of these reasons, the unfair trade practices claim relating to the failure to disclose and the failure to complete the renovations survives Defendants' motion to dismiss, but the Court otherwise dismisses the unfair trade practices claim.

## I. Alter Ego Liability (Count X)

In Count X, Plaintiff claim that because of the close relationship between Matthew Spicer and Spicer HB, LLC, including that Spicer is the principal of Spicer HB, "Defendant Spicer HB is an alter-ego of Defendant Spicer, and Defendant Spicer HB should be held jointly and severally liable with Defendant Spicer for the relief sought by Plaintiff herein." Compl. ¶ 119. "[A] party may be permitted to pierce the corporate veil upon proof 'that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong,' or 'other considerations of justice and equity' justify it." *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470 (D.C. 2008). The parties disagree about whether Plaintiff has identified a "fraud or "wrong" that has been perpetuated through Spicer HB. The Court concludes that, at least for the pleading stage, Plaintiff has sufficiently identified a fraud or wrong that Spicer has committed through the

actions of Spicer HB. *See McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 8 (D.D.C. 2009) ("[W]hat a plaintiff must show at the pleadings stage cannot be equated with what he needs to show to prevail at trial."). Plaintiff have alleged several torts that Defendants have committed through the actions of Spicer HB, and the Court concludes today that several of those claims survive Defendants' motion to dismiss. Accordingly, the Court concludes that the claim for alter ego liability survives the motion to dismiss, as well, with respect to the other claims that also survive the pending motion to dismiss.

*        *        *

In sum, the Court concludes that the following claims survive Defendants' motion to dismiss: the breach of contract claim, with respect to the failure to complete renovations on the property (Count I); the breach of the implied duty of good faith and fair dealing, with respect to the failure to complete renovations on the property (Count III); the unfair trade practice claim, with respect to the failure to complete renovations on the property and the failure to disclose known defects (Count IX); and the alter ego claim, as applied to the other claims that also survive the motion to dismiss (Count X). The Court dismisses all other claims.

With respect to the portion of the unfair trade practices claim that the Court dismisses, the Court cannot conclude that "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficienc[ies]." *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) (quoting *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006)). Similarly, with respect to the portions of the fraudulent misrepresentation claim and of the negligent misrepresentation claim in which Plaintiff claims that Defendants falsely represented that they would complete the renovations on the Property, insofar as those portions of the claims are not based on any representations in documents attached to the Complaint, the Court cannot conclude "the

allegation of other facts consistent with the challenged pleading could not possibly cure the deficienc[ies]." *Id.* Therefore, the Court dismisses those claims without prejudice. The Court dismisses all other claims with prejudice because the Court concludes that they fail to state a claim as a matter of law, largely because of the language of the Sales Contract and other documents that Plaintiff attached to the Complaint, as well as the legal import thereof. Therefore, "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficienc[ies]." *Id.*

## J.  Request to Amend Complaint

In a single sentence in the conclusion to Plaintiff's Opposition to Defendants' Motion to Dismiss, Plaintiff requests, in the alternative, leave to amend his Complaint generally if "Court finds persuasive the Defendants' argument to bar Plaintiff's claims in contract and tort." Pl.'s Opp'n at 6. Plaintiff does not attach a proposed amended complaint nor does he suggest how this amended complaint would fix any flaws with the Complaint. The Court notes that, with respect to the alter ego claim, Plaintiff more specifically requests, in the alternative, "leave to amend Count XI[6] of the Complaint [Alter Ego Liability] to rephrase the 'wrong' perpetrated by" Defendants. While amending the claim regarding alter ego liability is unnecessary because the Court concludes that Plaintiff has sufficiently plead that count to survive the motion to dismiss, the Court notes that Plaintiff does not propose any ways in which a proposed amended complaint would remedy flaws with the other claims in the Complaint. Accordingly, the cursory request to amend the Complaint is denied without prejudice. However, the Court notes that Plaintiff may not seek to amend the Complaint with respect to those claims that the Court has dismissed with prejudice.

---

[6] It appears that Plaintiff intends to reference Count X here.

# IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' [9] Motion to Dismiss Complaint. The Court denies the motion with respect to the following claims: the breach of contract claim, with respect to the failure to complete renovations on the property (Count I); the breach of the implied duty of good faith and fair dealing, with respect to the failure to complete renovations on the property (Count III); the unfair trade practice claims, with respect to the failure to complete renovations on the property and the failure to disclose known defects (Count IX); and the alter ego claim, as applied to the other claims that also survive the motion to dismiss (Count X). The Court grants the motion with respect to all other claims and dismisses those claims. Insofar as the Court dismisses the unfair trade practices claim, that claim is dismissed without prejudice; the fraudulent misrepresentation claim and the negligence misrepresentation claim with respect to the completion of the renovations on the property, insofar as they are not based on representations in documents attached to the Complaint, are similarly dismissed without prejudice. All other claims are dismissed with prejudice.

An appropriate Order accompanies this Memorandum Opinion.

Dated: September 22, 2015

                                                                    /s/
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge